# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) Robert Stallcup, <br> (2) Chad Chappell, and <br> (3) Casey Vance, <br><br><br> Plaintiffs, <br><br> v. <br><br> (1) 3M Company, (2) 3M Occupational Safety, LLC, (3) Aearo Holding LLC, (4) Aearo Intermediate LLC, Aearo LLC, and (5) Aearo Technologies LLC, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )   Case No. CIV-21-207-HE <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## <u>NOTICE OF REMOVAL</u>

Pursuant to 28 U.S.C. § § 1332, 1441, 1442(a)(1), and 1446, Defendants 3M Company and 3M Occupational Safety, LLC (collectively, "3M") and Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, and Aearo Technologies LLC  (collectively, "Aearo" or together, "Defendants") hereby give notice of the removal of this civil action from the District Court of Comanche County, of the State of Oklahoma, to the United States District Court for the Western District of Oklahoma.  As grounds for this removal, 3M states as follows:

1.      This civil action was commenced on or about November 17, 2021, by the filing of a Summons and Petition in the State Court of Comanche County, Oklahoma. A

copy of the Petition is attached as **Exhibit 1**. Defendants were served with the Summons and Complaint on March 5, 2021. A copy of the Summons served on Defendant 3M Company is attached as **Exhibit 2**. A copy of the Summons served on Defendant Aearo Technologies LLC is attached as **Exhibit 3**. A copy of the Summons served on Defendant Aearo, LLC is attached as **Exhibit 4**. Pursuant to LCvR81.2, a copy of the Docket Sheet from the District Court of Comanche County is attached as **Exhibit 5**. Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is filed within 30 days of receipt, by service or otherwise, of the initial pleadings in this action.

2.     Plaintiffs allege that they suffer from hearing loss and tinnitus from the use of Defendants' 3M's Dual-ended Combat Arms™ Earplugs version 2 ("CAEv2") while serving in the United States Armed Forces. (Ex. 1 (Petition ¶¶ 2, 4, 7)).

3.     CAEv2 was designed by Aearo Technologies LLC ("Aearo") in close collaboration with the U.S. military.[1] CAEv2 represented a revolutionary breakthrough in hearing protection for service members by allowing soldiers to maintain situational awareness (*e.g.*, to hear nearby voice commands) while also maintaining some protection from gunfire and other higher decibel impulse sounds. CAEv2 met the U.S. military's specifications and helped the military provide hearing protection to service members.

4.     This Court has jurisdiction over this action and the case is therefore removable. Specifically, this action is removable for three separate and independent reasons.

---

[1] 3M acquired Aearo in 2008.

2

5.      *First*, this Court has diversity jurisdiction under 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000, and thus removal is proper under 28 U.S.C. § 1441.

6.      *Second*, removal is proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), because Aearo was acting under the direction of a federal officer when it designed and sold the CAEv2, and 3M intends to assert various federal defenses— including the government contractor defense—in response to Plaintiff's claims. *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1180 (7th Cir. 2012) (removal under the federal officer removal statute "promotes litigating federal defenses … in a federal forum so that 'the operations of the general government [are not] arrested at the will of one of [the states]'") (*quoting Tennessee v. Davis*, 100 U.S. 257, 263, 25 L.Ed. 648 (1879)).

7.      *Third*, this Court has federal question jurisdiction under 28 U.S.C. § 1331 because plaintiffs' alleged injuries occurred at least in part on a "federal enclave"—namely, United States Army installations—and thus removal is proper under 28 U.S.C. § 1441. *See* (Ex 1 (Petition ¶ 2)) *Jamil v. Workforce Resources, LLC*, 2018 WL 2298119 (S.D. Cal. May 21, 2018) ("Camp Pendleton is a federal enclave."); *see Haining v. Boeing Co.*, 2013 WL 4874975, at *2 (C.D. Cal. Sept. 11, 2013) (concluding Vandenberg AFB is a federal enclave); *see Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006) ("Federal courts have federal question jurisdiction over tort claims that arise on 'federal enclaves.'") and *Akin v. Ashland Chemical Co.*, 156 F.3d 1030, 1034 (10th Cir. 1998) ("Personal injury actions which arise from incidents occurring in federal enclaves may be removed to federal district court as a part of federal question jurisdiction.").

3

**BACKGROUND**

8.      The CAEv2 is an earplug with two insertable ends developed specifically for the needs of the U.S. military for use as hearing protection in noisy environments.  CAEv2 has a yellow end and green end.  Each end has a different purpose.  When the yellow end of the earplug is inserted, users can still hear nearby low-level sounds, like verbal communication, but receive protection from high-level impulse noise, like gunfire.  In contrast, when the green end of the earplug is inserted, CAEv2 acts like a traditional earplug, providing steady and continuous protection from both ambient and impulse noises.

9.      In the area of national defense, the U.S. military relies on close collaboration with private contractors to design and develop products, such as the CAEv2, and manufacture and supply those products in accordance with highly particular specifications balancing the multitude of operational and budgetary needs of equipping the nation's fighting forces.  This litigation involves a classic example of that military-contractor collaboration.

10.     CAEv2 was designed at the request of and in consultation with military audiologists, including Dr. Doug Ohlin.  Dr. Ohlin at the time served in the capacity of Program Manager, Hearing Conservation, U.S. Army Center for Health Promotion and Preventive Medicine.  Dr. Ohlin and his program directed Aearo to ensure that the CAEv2 would appropriately balance performance with military operational needs for soldiers and military personnel.  For example, Dr. Ohlin proposed the inclusion of the filter that was a key updated feature of the CAEv2.

4

11.     Dr. Ohlin also required Aearo to shorten the CAEv2 and approved its final length.  Aearo initially provided Dr. Ohlin with longer production samples, but Dr. Ohlin rejected these because they could not fit in a military-issued carrying case and interfered with the straps of soldiers' helmets.  When Aearo provided Dr. Ohlin with shortened samples, he approved the product for bulk purchase by the military.

12.     Dr. Ohlin's involvement continued following the military's decision to purchase and deploy the CAEv2.  He provided Aearo with feedback from military personnel as to using the CAEv2 and developed training and instructions for military personnel.

13.     In sum, the CAEv2 was launched at the request of, and in close coordination with, the U.S. military.  The CAEv2's design reflects the direction and feedback of individuals acting on behalf of the U.S. military.  The U.S. military purchased the CAEv2 and issued it to service members like plaintiffs precisely because the CAEv2 fulfilled the military's specifications and accomplished the military's goal of balancing hearing protection with operational needs.

**BASES FOR FEDERAL JURISDICTION AND REMOVAL**

14.     A defendant need only submit a short and plain statement that sets forth plausible allegations supporting the grounds of removal.  *See* 28 U.S.C. § 1446(a) (A defendant or defendants desiring to remove any civil action from a State court… "containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action"); *see also Wickens v. Blue Cross of California, Inc.*, 2015 WL 3796272, at *4 (S.D.

Cal. June 18, 2015) ("A notice of removal must contain a 'short and plain statement of the grounds for removal.' This requirement tracks the pleading requirement in Federal Rules of Civil Procedure 8.") (citing *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 553 (2014)); *see*; *Betzner v. Boeing Co.*, 910 F.3d 1010, 1014 (7th Cir. 2018).  The defendant is not required to make evidentiary submissions.  *See Archuleta v. Avcorp Composite Fabrication, Inc.*, 2018 WL 6382049, at *2 (C.D. Cal. Dec. 6, 2018) (denying motion to remand and proclaiming notice of removal need include only a plausible allegation establishing federal jurisdiction; *see also Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010) (a defendant may carry its removal burden through factual allegations establishing jurisdiction); *Pudlowski v. The St. Louis Rams, LLC*, 829 F.3d 963, 964 (8th Cir. 2017) ("The Rams notice of removal did not need to be accompanied by a submission of evidence.").  Instead, "jurisdictional allegations control unless it is legally impossible for them to be true." *Betzner*, 792 F.3d at 1014; *see Junhong v. Boeing Co.*, 792 F.3d 814, 815 (7th Cir. 2015) (rejecting notion that federal jurisdiction hinges upon a high degree of certainty that jurisdictional facts exist); *Archuleta*, 2018 WL 6382049, at *2.

### This court has diversity jurisdiction.

15.    Federal courts have diversity jurisdiction under 28 U.S.C. § 1332 "where the matter in controversy exceeds the sum or value of $75,000… and is between citizens of different states…" *Friedman v. New York Life Ins. Co.*, 410 F.3d 1350, 1353 (11th Cir. 2005).  Both requirements are met here.

**The Parties are Diverse.**

16.     The Plaintiffs are not citizens of the states of Minnesota or Delaware for diversity purposes.  (Ex. 1 (Petition ¶ 1.))  Instead, all three Plaintiffs are residents and citizens of the state of Oklahoma for diversity purposes.  (*Id.*)

17.     Defendants are not citizens of Oklahoma for diversity purposes.

18.     3M Company is a corporation organized and existing under the laws of the state of Delaware with its principal place of business in St. Paul, Minnesota.

19.     3M Occupational Safety LLC is a limited liability company organized and existing under the laws of the state of Delaware, with its principal place of business in St. Paul, Minnesota.

20.     Aearo Holding LLC and Aearo Technologies LLC are limited liability companies organized and existing under the laws of the state of Delaware, with their principal place of business in St. Paul, Minnesota.  Aearo Intermediate LLC and Aearo LLC are also limited liability companies organized and existing under the laws of the state of Delaware, with their principal place of business in Indianapolis, Indiana.

21.     Under Oklahoma law, a limited liability company is an unincorporated association. 18 O.S. § 2001(11). For purposes of diversity jurisdiction, an unincorporated association "takes on the citizenship of all its members." <u>Siloam Springs Hotel, L.L.C. v. Century Sur. Co.</u>, 781 F.3d 1233, 1238 (10th Cir. 2015) (citing <u>Carden v. Arkoma Assocs.</u>, 494 U.S. 185, 195-96 (1990)).

22.     Aearo Technologies LLC is a wholly owned subsidiary of Aearo LLC. Aearo LLC is Aearo Technologies LLC's sole member.

23.     Aearo LLC is a wholly owned subsidiary of Aearo Intermediate LLC. Aearo Intermediate LLC is Aearo LLC's sole member.

24.     Aearo Intermediate LLC is a wholly owned subsidiary of Aearo Holding LLC. Aearo Holding LLC is Aearo Intermediate LLC's sole member.

25.     Aearo Holding LLC is a wholly owned subsidiary of 3M Occupational Safety LLC. 3M Occupational Safety LLC is Aearo Holding LLC's sole member.

26.     3M Occupational Safety LLC is a wholly owned subsidiary of 3M Company. 3M Company is 3M Occupational Safety LLC's sole member.

27.     3M Company was, at the time of filing of the Complaint, and still is, a citizen of the States of Delaware and Minnesota, within the meaning of 28 U.S.C. §1332 (c)(1), which provides that "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." *See also Burnett v. Home*, 2020 WL 6324159, at *1 (M.D. Fla. Oct. 13, 2020) (providing that, "the state of incorporation as well as the location of the principal place of business must be stated to sufficiently allege citizenship of a corporation.").

28.     Because a limited liability company takes on the citizenship of its members, each of the defendant LLC's are deemed citizens of Minnesota and Delaware. *Siloam Springs Hotel, L.L.C.*, *supra*.  3M Occupational Safety LLC takes on the citizenship of 3M Company, a citizen of Minnesota and Delaware. Similarly, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, and Aearo Technologies LLC, in turn, take on the citizenship of 3M Company, as parts of the wholly-owned-subsidiary chain.

29.     Thus, Defendants are citizens of Minnesota and Delaware. 28 U.S.C. §1332 (c)(1),

30.     Because Plaintiffs are neither citizens of Delaware, nor Minnesota, and Defendants are citizens of Delaware and Minnesota, the parties are completely diverse.

**The Amount In Controversy Requirement Is Met.**

31.     The amount in controversy requirement of 28 U.S.C. § 1332(a) is also met. Plaintiffs allege that they have sustained actual damages in excess of $75,000, and pray for punitive damages also in excess of $75,000.  (Ex. 1 (Petition at Prayer for Relief.))

32.     If a complaint does not limit its request for damages to a precise amount, it is proper for the District Court to make an independent appraisal of the value of plaintiffs' claims.  *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 347 (1977); *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002); *Angus v. Shiley, Inc.*, 989 F.2d 142, 146 (3rd Cir. 1993); *Maxon v. Texaco Refining & Marketing Inc.*, 905 F.Supp. 976, 978-79 (N.D. Okla. 1995).  The amount in controversy is satisfied unless "it is 'legally certain' that the recovery (from plaintiff's perspective) or cost of complying with the judgment (from defendant's) will be less than the jurisdictional floor…" *McPhail v. Deere & Co.*, 529 F.2d 947, 955 (10th Cir. 2008) (quoting *Meridian Security Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006)).  A "notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Dart*, 574 U.S., 81, 135 S. Ct. at 554.

33.     Therefore, all the requirements are met for removal under 28 U.S.C. §§ 1332 and 1441.  Because the controversy in this civil litigation is wholly between citizens of

different states and because the amount in controversy exceeds the sum of $75,000 exclusive of costs and interest, Defendants may remove this action pursuant to 28 U.S.C. §§ 1332 and 1441.

## Removal is proper under the federal officer removal statute.

34.     Removal is also proper under 28 U.S.C. § 1442(a) (1), which provides for removal when a defendant is sued for acts undertaken at the direction of a federal officer.

35.     Removal rights under this section are much broader than under the general removal statute, 28 U.S.C. § 1441. *See Goncalves By and Through Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1244-45 (9th Cir. 2017) ("Throughout our analysis, we pay heed to our duty to interpret Section 1442 broadly in favor of removal.") (citing *Durham*, 445 F.3d at 1252); *Ayo v. 3M Co.*, 2018 WL 4781145, at *6 (E.D.N.Y. Sept. 30, 2018) ("[W]hile removal under the general removal statute, 28 U.S.C. § 1441, is generally disfavored, removal under the federal officer removal statute is favored in the interest of public policy.") (internal citations and quotations omitted).  Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999).  This is because Section 1442 protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prod.*, 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011).  This important federal policy "should not be frustrated by a narrow, grudging interpretation of section 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *see Harris v. CBS Corp.*, 2019 WL 913619, at *2 (N.D.

10

Cal. Feb. 25, 2019) (rejecting a narrow reading of the federal officer removal statute); *Vrijesh S. Tantuwaya MD, Inc. v. Anthem Blue Cross Life and Health Ins. Co.*, 169 F.Supp.3d 1058, 1063 (S.D. Cal. 2016) (recognizing defendants enjoy "much broader removal rights under the federal officer removal statute than they do under the general removal statute…") (quoting *Leite v. Crane Co.,*, 749 F.3d 1117, 1122(9th Cir. 2014)). And a court analyzing removal under the federal officer statute "views the facts in the light most favorable to the defendants."  *Ayo*, 2018 WL 4781145, at *6; *see Willis v. Buffalo Pumps, Inc.*, 2013 WL 1316715, at *3 (S.D. Cal. Mar. 29, 2013) (adopting standard set forth in *Hagen v. Benjamin Foster Co.*[2] "where defendant identifies facts which, viewed in the light most favorable to the defendant, entitle him or her to a complete defense").

36.     "Federal officer removal is proper when the defendant (1) is a person within the meaning of the statute, (2) is acting under the United States, its agencies, or its officers, (3) is acting under color of federal authority, and (4) has a colorable federal defense."[3] *Mesa v. California,* 489 U.S. 121, 124-25, 129-31, 134-35 (1989); *Durham*, 445 F.3d at 1251.  All requirements for removal under § 1442(a)(1) are satisfied here.

**Defendants Are A "Person" Under The Federal Officer Removal Statute.**

37.     Defendants are a "person" under the federal officer removal statute.  *See Fontalvo ex rel. Fontalvo v. Sikorsky Aircraft Corp.*, 2013 WL 3197071, at *2 (S.D. Cal. June 20, 2013) (noting corporations qualify as a "person" under § 1442(a)(1)); *see also*

---

[2] 739 F. Supp. 2d 770, 778 (E.D. Pa. 2010).

[3] *See Goncalves*, 865 F.3d at 1244-45 (separating "acting under" and "causal connection" requirements).

*Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d Cir. 2016) (for purposes of §

1442(a)(1), the term "person" includes "'companies, associations, firms, [and]

partnerships.'").

### The "Acting Under" Requirement Is Satisfied.

38.     To satisfy the second requirement ("acting under" a federal officer) "a private

person's actions 'must involve an effort to assist, or to help carry out, the duties or tasks of

the federal superior.'" *Jacks v. Meridian Resource Co., LLC*, 701 F.3d 1224, 1230 (8th

Cir. 2012) (holding that health insurer contracted by U.S. Office of Personnel Management

was "acting under" a federal officer) (quoting *Watson v. Phillip Morris Co., Inc.*, 551 U.S.

142, 152 (2007)); *see also Anthem Blue Cross*, 169 F.Supp.3d at 1064 ("In addition,

precedent and statutory purpose make clear that the private person's 'acting under' must

involve an effort to *assist* or to help *carry out*, the duties or tasks of the federal superior.")

(internal citations omitted).   Moreover, the words "acting under" are to be interpreted

broadly and must be construed liberally. *Watson,* 551 U.S. at 147; *see also Isaacson v.

Dow Chemical Co.*, 517 F.3d 129, 137 (2nd Cir. 2008) (same); *see also Goncalves*, 865

F.3d at 1244 ("Throughout our analysis, we pay heed to our duty to interpret Section 1442

broadly in favor of removal.") (citing *Durham*, 445 F.3d at 1252).   Federal courts "have

explicitly rejected the notion that a defendant could only be 'acting under' a federal officer

if the complained-of-conduct was done at the specific behest of the federal officer or

agency." *Papp,* 842 F.3d at 813.   Instead, the relationship between a private person and

the federal office or agency typically involves "subjection, guidance, or control." *Anthem

Blue Cross*, 169 F.Supp.3d at 1064.

12

39.     The "acting under" requirement is met here because Plaintiffs directly challenge Defendants' alleged conduct in providing vital products "that, in the absence of Defendants, the Government would have had to produce itself." *Isaacson*, 517 F.3d at 137. The United States military recognizes the importance of providing hearing protection to service members, like Plaintiffs, and undeniably would have produced and designed earplugs itself but for the marketplace, including 3M and Aearo.  As such, Defendants assisted the military in carrying out its task, while under government supervision, guidance, and control, in designing a set of combat-ready earplugs that balance both operational and safety needs. *Anthem Blue Cross*, 169 F.Supp.3d at 1064.

40.     Defendants developed the CAEv2 under the direction of, and with significant, detailed involvement of, representatives of the U.S. military.  *See e.g. Ruppel*, 701 F.3d at 1181 (holding that defendant was "acting under" a federal officer because it "worked hand-in-hand with the government, assisting the federal government in building warships.  'Acting under' covers situations, like this one, where the federal government uses a private corporation to achieve an end it would have otherwise used its own agents to complete."); *see Fung v. Abex Corp.*, 816 F.Supp. 569, 572 (N.D. Cal. 1992) (noting "acting under" generally requires some aspect of direct and detailed control over defendant); *see also Fontalvo*, 2013 WL 3197071, at *3 (finding the Navy exercised direct and detailed control over the design and construction of the helicopter at issue); *Anthem Blue Cross*, 169 F.Supp.3d at 1065-66 (finding defendant "acted under" federal officer in assisting the government fulfilling the task of managing a federal employee health insurance program).

41.     As described above, the military's involvement went beyond merely establishing standards or guidelines.  Its involvement and control included detailed requests to modify operational features, such as ensuring the CAEv2 would fit in military-issued containers by shortening the stem.  The military dictated the color, material, and packaging of CAEv2.  Moreover, the military maintained direct control over CAEv2's design specifications, in order to balance operational and tactical needs by requiring the triple-flange, shortened nature of the earplug, which Plaintiffs opine is the operative design flaw.  *See Fontalvo*, 2013 WL 3197071, at *3 (finding defendant "acted under" for purposes of federal officer removal where the alleged defects were designed according to detailed government specifications).  This direct, detailed, and continuous government control enabled Defendants to produce a product for the government, which, in the absence of the Defendants, would have produced itself.  *Anthem Blue Cross*, 169 F.Supp.3d at 1065-66.  Such involvement is quintessential activity "acting under" a federal officer.  *See e.g. Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387 (5th Cir. 1998) (authorizing removal of a tort suit against private defense contractors that manufactured Agent Orange); *Fung*, 816 F.Supp. at 572.

**The "Causation" Requirement Is Satisfied.**

42.     Whether a defendant's actions were taken "under color of federal office… has come to be known as the causation requirement."  *Isaacson*, 517 F.3d at 137 (internal quotation marks, alterations, citations omitted); *see also Betzner*, 910 F.3d at 1015 (the "acting under the color of federal authority" requirement," is "distinct from the 'acting under' requirement in the same way a bona fide federal officer could not remove a trespass

suit that occurred while he was taking out the garbage—there must be a 'causal connection between the charged conduct and asserted official authority.'").  Like the "acting under" requirement, "[t]he hurdle erected by this requirement is quite low."  *Id*.; *see also Goncalves*, 865 F.3d at 1245-46 ("this meets the low bar that the causal-connection prong requires.").  Courts "credit Defendants' theory of the case when determining whether [this] causal connection exists." *Isaacson,* 517 F.3d at 137 *(citing Acker,* 527 U.S. at 431-32 (1999) ("demanding an airtight case on the merits in order to show the required causal connection" would "defeat the purpose of the removal statute");[4] *see also Leite*, 749 F.3d at 1124 (noting courts credit defendant's theory of the case for purposes of establishing a causal connection).

43.    In 2011, Congress further expanded Section 1442 by amending section 2(b) to permit removal "for *or relating to* any acts under color" of federal office, so as "to broaden the universe of acts that enable Federal officers to remove to Federal court." H.R. REP. 112-17, 6, 2011 U.S.C.C.A.N. 420, 425 (emphasis showing addition); *see also Goncalves*, 865 F.3d at 1245 ("The Blues need show only that the challenged acts' occurred because of what they were asked to do by the Government.") (internal citations and quotations omitted).

44.    "To show causation, Defendants must only establish that the act that is the subject of Plaintiffs' attack . . . occurred *while* Defendants were performing their official

---

[4] The "acting under" and "under color of" prongs overlap.  Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction." *Albrecht*, 2011 WL 5109532, at *5.

duties." *Isaacson,* 517 F.3d at 137-38 (emphasis in original); *see Leite,* 749 F.3d at 1124 ("Such a [causal] nexus exists here because the very act that forms the basis of plaintiffs' claims… is an act that Crane contends it performed under the direction of the Navy."). Here, Plaintiffs' claims arise from Defendants' design, production, and sale of CAEv2 to military specifications.  Plaintiffs aver that the design and manufacture of the CAEv2 is "defective" and that it was "unusually dangerous because it was not effective for its intended use."  (Ex. 1 (Petition ¶¶ 5, 6)).  But Aearo developed and designed the CAEv2 earplugs, including the establishment of the specific design criteria, at the direction of federal officers, while performing its contractual duties.  And the required specifications are what gives rise to the purported defect.  *See Anthem Blue Cross*, 169 F.Supp.3d at 1064 (denying motion to remand and finding a causal nexus where "the act that forms the basis of Plaintiff's claims-Defendants' failure to pay Plaintiff directly for the provided emergency services-is an act that Defendants performed under the administration of the Benefit Service Plan pursuant to OPM's [Office of Personnel Management] guidance and supervision).

45.    The same is true for Defendants' fitting and usage instructions.  *See Leite*, 749 F.3d at 1124 (affirming district court's denial of motion to remand and finding a causal nexus because "the very act that forms the basis of plaintiffs' claims - Crane's failure to warn about asbestos hazards- is an act that Crane contends it performed under the direction of the Navy"); *see Goncalves*, 865 F.3d at 1245 ("Here, OPM [Office of Personnel Management] asked the Blues to administer the plan and to make 'reasonable efforts' to pursue known subrogation claims. This meets the low bar that the causal-

connection prong requires."); s*ee also Ayo*, 2018 WL 4781145, at *9 (denying motion to remand and finding causal connection where the conduct complained of occurred because of what the government asked contractors to do); *see also Corley v. Long-Lewis, Inc.*, 688 F.Supp.2d 1315, 1334 (N.D. Ala. 2010) (finding a "causal nexus" where defendant designed turbines under the supervision of the Navy, according to its specifications).

46.     Further, even if Plaintiffs were to assert that any alleged defect was the result of an act not specifically contemplated by the government contract, "it is enough that the contracts gave rise" to the harm alleged.  *See Isaacson,* 517 F.3d at 138. "[W]hether the challenged act was outside the scope of Defendants' official duties, or whether it was specifically directed by the federal Government, is one for the federal—not state—courts to answer."  *Id. (citing Willingham,* 395 U.S. at 409.); *see also Leite*, 749 F.3d at 1124 (same).  Thus, any argument that CAEv2's alleged defect was not specifically directed by the government cannot defeat federal officer removal.  *See Ayo*, 2018 WL 4781145, at *9 ("To satisfy the causation requirement, Manufacturing Defendants need only show that the conduct at issue occurred during their performance of the government-directed action, even if the government did not call for the complained-of act.").

**Defendants Have "Colorable" Federal Defenses.**

47.     Defendants intend to assert federal defenses in response to Plaintiffs' claims, including the government contractor defense.

48.     Courts around the county have held that the government contractor defense supports removal under § 1442(a)(1). *See, e.g., Betzner*, 910 F.3d at 1015-16 (finding colorable government contractor defense supports removal under Section 1442); *Jacks,* 701

F.3d at 1234-35 (government contractor defense supports removal under § 1442); *Isaacson,* 517 F.3d at 139 (same); *Zeringue v. Crane Co.,* 846 F.3d 785 (5th Cir. 2017) (same); *McMahon v. Presidential Airways, Inc.,* 410 F. Supp. 2d 1189, 1200 (M.D. Fla. 2006) (both government contractor defense and combatant activities defenses supported removal under Section 1442); *Leite*, 749 F.3d at 1123 (government contractor defense supports removal under Section 1442); *Willis v. Buffalo Pumps, Inc*, 2013 WL 1316715, at *3 (S.D. Cal. Mar. 29, 2013); *see Fung*, 816 F.Supp. 569 at 573 (denying motion to remand and finding defendant established colorable government contractor defense).

49.     A defendant need not prove its defense at the removal stage; a defendant need only show that a federal defense is "colorable." *Jacks,* 701 F.3d at 1235.  Courts will not "require that these defenses be clearly sustainable in order to support removal under § 1442(a)(1)." *Id. (citing Willingham,* 395 U.S. at 406-07 ("[The federal officer removal statute] is broad enough to cover all cases where federal officers can raise a colorable defense. . . . The officer need not win his case before he can have it removed.")); *Anthem Blue Cross*, 169 F.Supp.3d at 1066 (same); *see also Jennings v. Bell Helicopter Texron, Inc.*, 2012 WL 12883239, at *3 (S.D. Cal. Oct. 23, 2012) (rejecting a narrow interpretation of colorable federal defense); *Fung*, 816 F.Supp. at 573; *see also California v. Scharff,* 2019 WL 117615, at *1 (S.D. Cal. Jan. 7, 2019) ("An old and well-established body of law governs federal officer removals under § 1442. The defense need not be shown to be meritorious or even likely to succeed in order for removal to be proper.") (internal citations omitted).  As the Seventh Circuit explained in *Betzner*:

The colorable federal defense requirement fulfills Article III jurisdiction and reflects Congress's intent to have federal defenses litigated in federal court. *Id.* at 1182. "Requiring the defense only be colorable, instead of 'clearly sustainable,' advances this goal" and "at this point, we are concerned with who makes the ultimate determination, not what that determination will be." Id. (internal citations omitted); *see also Willingham*, 395 U.S. at 407, 89 S.Ct. 1813 (A defendant invoking § 1442(a) "need not win his case before he can have it removed."); *Venezia*, 16 F.3d at 212 ("A federal defendant need not show that he is entitled to prevail in order to have access to the federal forum.") (emphasis in original).

50.     Additionally, at the removal stage, the inquiry is "purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue." *Cuomo v. Crane Co., 771* F.3d 113, 116 (2d Cir. 2014) (citing *Kircher v. Putnam Funds Trust,* 547 U.S. 633, 644 n. 12 (2006)); *Betzner*, 910 F.3d at 1016 (holding that "the district court erred in concluding that Boeing was required to submit evidence to support its removal allegations").[5] Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants." *Hagen v. Benjamin Foster Co.,* 739 F. Supp. 2d 770, 783-84 (E.D. Pa. 2010); *see Willis*, 2013 WL 1316715, at *3 (adopting standard laid out in *Hagen* where the Court views facts supplied by defendant in the light most favorable to defendant). "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of

---

[5] *See also Kraus v. Alcatel-Lucent*, C.A. No. 18-2119, 2018 WL 3585008, at *2 (E.D. Pa. Jul. 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage.  Instead, [the court] only determines whether there are sufficient facts alleged to raise a colorable defense.").

the facts to a federal, not a state, court.'" *Cuomo,* 771 F.3d at 116 (quoting *Willingham,* 395 U.S. at 409); *see Leite*, 749 F.3d at 1123 ("Because plaintiffs have raised a factual attack on Crane's jurisdictional allegations, Crane must support its allegations with competent proof."); *see also Jennings*, 2012 WL 12883239, at *4 (noting defendants need only assert a colorable defense; not prove it); *Scharff*, 2019 WL 117615, at *1 (noting defense need not be shown to be even likely to succeed).

### 1.    3M Has A Colorable Government Contractor Defense.

51.    Under the government contractor defense, the defendant is not liable for alleged defects or negligence with respect to military equipment or supplies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle,* 487 U.S. at 512; *Getz v. Boeing Co.*, 654 F.3d 852, 860-61 (9th Cir. 2011).

52.    Defendants have satisfied all of these elements for purposes of removal. First, Dr. Ohlin directed Aearo to introduce the allegedly defective feature of the CAEv2— its short length—in order to meet tactical military needs.  Dr. Ohlin then approved the length of the final product.   Second, the CAEv2 conform to government-approved specifications because it has the length that Dr. Ohlin approved.   Third, the government was adequately informed regarding alleged product-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary authority in specifying and procuring the CAEv2 earplugs. The U.S. military was actively involved in back-and-forth discussions with Aearo in the

development of the CAEv2 regarding its length and instructions for use.  Aearo's engineers discussed the challenges, and trade-offs, including the folding back of the flanges, in conforming the design of the CAEv2 to fit within the military's desired carrying cases and with its other equipment.  These facts are more than enough to support a "colorable" government contractor defense and removal under the federal officer statute.  *See Betzner*, 910 F.3d at 1016 (finding government contractor defense colorable where defendant provided plausible allegations it manufactured aircraft according to government specifications and government was aware of any potential hazards); *Butler v. Ingalls Shipbuilding, Inc.*, 89 F.3d 582, 585 (9th Cir. 1996) (requiring a continuous exchange and back-and-forth dialogue to establish first *Boyle* prong); *Getz*, 654 F.3d at 861 ("When the government engages in a thorough review of the allegedly defective design and takes an active role in testing and implementing that design, *Boyle's* first element is met.").

53.    At minimum, this constitutes colorable evidence that the U.S. military generally "made a discretionary determination" regarding the requirements and design of the CAEv2's benefits against the alleged risks.  *See In re Agent Orange Prod Liab. Litig.*, 517 F.3d 76, 90 (2d Cir. 2008); *Ayo*, 2018 WL 4781145, at *14 (holding removal proper under § 1442 because defendants presented "colorable evidence" that government was aware of alleged problems with product at issue); *see Betzner*, 910 F.3d at 1016 (finding government contractor defense colorable where defendant provided plausible allegations it manufactured aircraft according to government specifications); *see Fontalvo*, 2013 WL 3197071, at *6 (finding colorable government contractor defense); *see also Albrecht,* 2011 WL 5109532, at *5 ("A defendant is not required to warn the government where 'the government knew as much

or more than the defendant contractor about the hazards of the product.") (citation omitted). Where, as here, the government has exercised "discretionary authority over areas of significant federal interest such as military procurement," the government contractor defense applies. *Agent Orange,* 517 F.3d at 89-90; *see also Ayo,* 2018 WL 4781145, at * 13.

### This court has federal enclave JURISDICTION.

54.     In addition, removal of this action is proper because Plaintiffs' claims almost certainly arose, at least in part, at a federal enclave—namely, a U.S. military facility. Plaintiffs assert that they were issued CAEv2 in connection with their service in the United States Armed Forces, and further assert that, as a result of their use of CAEv2, they now allegedly suffer from hearing loss and tinnitus. (Ex. 1 (Petition ¶¶ 2, 3, 7.)) To that extent, the claims are governed by federal law and are subject to this Court's federal question jurisdiction under 28 U.S.C. § 1331. Thus, this action is removable under 28 U.S.C. § 1441(a).

55.     "A federal enclave is a portion of land over which the United States government exercises federal legislative jurisdiction." *Brookhaven Sci. Assocs., LLC v. Donaldson,* No. 04 Civ. 4013(LAP), 2007 WL 2319141, at *5 (S.D.N.Y. Aug. 9, 2007) (internal quotation and citation omitted). The Constitution confers on Congress the power "[t]o exercise exclusive legislation" over the District of Columbia "and to exercise like authority over all places purchased by the consent of the legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dockyards, and other needful buildings." U.S. Const. art. I, § 8, cl. 17. "It has long been settled that where lands for such a purpose are purchased by the United States with the consent of the State

22

legislature, the jurisdiction theretofore residing in the state passes, in virtue of the constitutional provision, to the United States, thereby making the jurisdiction of the latter the sole jurisdiction." *Surplus Trading Co. v. Cook,* 281 U.S. 647, 652 (1930).

56.     Because the United States exercises sole lawmaking authority over a federal enclave, the law applicable to that enclave is, by definition, federal law, although such federal law may incorporate state-law rules of decision. *See, e.g., Mater v. Holley,* 200 F.2d 123, 124 (5th Cir. 1952) ("[A]ny law existing in territory over which the United States has `exclusive' sovereignty must derive its authority and force from the United States and is for that reason federal law"); *accord Macomber v. Bose,* 401 F.2d 545, 546 (9th Cir. 1968) ("State law theretofore applicable within the [ceded] area was assimilated as federal law, to remain in effect until changed by Congress.  Rights arising under such assimilated law, arise under federal law and are properly the subject of federal jurisdiction."); *Brookhaven Sci. Assocs.,* 2007 WL 2319141, at *5 ("[W]hen an area becomes a federal enclave, the state law in effect at the time of cession becomes federal law and is the applicable law unless Congress provides otherwise.").

57.     Federal courts have federal-question jurisdiction under 28 U.S.C. § 1331 for actions involving tort claims that arise on federal enclaves.  *See, e.g., Akin v. Ashland Chem. Co.,* 156 F.3d 1030, 1034 (10th Cir. 1998) (movant properly removed case to federal court when case was removed based on movant's status as a "person acting under" a federal officer, and status of the Air Force base as a federal enclave).  It follows that such actions, if originally filed in state court, may be removed to federal court under 28 U.S.C. § 1441(a). *See, e.g., Allison v. Boeing Laser Tech. Servs.,* 689 F.3d 1234, 1236 (10th Cir. 2012)

(affirming grant of summary judgment on state employment law claims as barred by federal enclave doctrine after removal from state court); *Jamil v. Workforce Resources, LLC*, 2018 WL 2298119, at *4 (S.D. Cal. May 21, 2018) (denying motion to remand where majority of pertinent events took place at Camp Pendleton - a federal enclave); *Kerr v. Del. N. Cos., Inc.*, 2017 WL 880409, at *4 (E.D. Cal. Mar. 6, 2017) (finding federal jurisdiction where the complaint alleged that the events pertinent to the claim took place at a federal enclave); *see also In re High-Tech Employee Antitrust Litig.*, 856 F.Supp.2d 1103, 1125 (N.D. Cal. 2012) (holding the federal enclave doctrine applies when the locus in which the claim arose is the federal enclave itself); *see Haining*, 2013 WL 4874975, at *2  (denying motion to remand "It is well-settled, and both parties concede, that Vandenberg is a federal enclave under the federal government's exclusive legislative jurisdiction- and has been since 1943") (citing *Taylor v. Lockheed Martin Corp.*, 78 Cal.App.4th 472, 479-80, (2000)).

58.    While the complaint is silent as to what specific United States Military installation Plaintiffs received CAEv2, Plaintiffs allege that they were distributed and used the CAEv2 during American military service.  (Ex. 1 (Petition ¶¶ 2, 3, 10)).  The military installation that Plaintiff received CAEv2 in connection with this active duty service likely qualifies as a federal enclave given that Plaintiffs used CAEv2 during military service.  *See Jamil*, 2018 WL 2298119, at *2 (inferring from Complaint that some of the alleged events occurred at Camp Pendleton, a federal enclave, and denying motion to remand).  Accordingly, this Court has subject matter jurisdiction over the action, and removal of the action is proper under 28 U.S.C. § 1441(a).

## CONCLUSION

**WHEREFORE,** Defendants 3M and Aearo respectfully request that this action in the District Court of Comanche County, State of Oklahoma, be removed to this Court, and that no further proceedings be had in state court.

*s/Michael T. Maloan*
Michael T. Maloan-OBA# 15097
FOLIART, HUFF, OTTAWAY & BOTTOM
201 Robert S. Kerr Avenue, 12th Floor
Oklahoma City, Oklahoma  73102
Telephone:  (405) 232-4633
Fax:  (405) 232-3462
michaelmaloan@oklahomacounsel.com

ATTORNEYS FOR DEFENDANTS
3M COMPANY, 3M OCCUPATIONAL
SAFETY, LLC, AEARO HOLDING LLC,
AEARO INTERMEDIATE LLC, AEARO
LLC, AND AEARO TECHNOLOGIES LLC

CERTIFICATE OF SERVICE

[ ] I hereby certify that on this 11th day of March, 2021, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Daniel M. Delluomo, OBA #11810
Delluomo & Crow, P.A.
6812 N. Robinson Avenue
Oklahoma City, OK  73116
T: 405-843-0400
F: 405-843-5005
monty@delluomo.com
*Attorney for Plaintiffs*

*s/Michael T. Maloan*

25